IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK SPENCER MARR,<br><br>Defendant. | CR 25-36-BLG-SPW<br><br>ORDER |

Defendant Frank Spencer Marr moves to dismiss the 18 U.S.C. § 922(g)(1) charge against him under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S 680 (2024), arguing that § 922(g)(1) violates his Second Amendment right to possess firearms. (Docs. 20, 21, 23). The Government opposes the motion. (Doc. 22).

The motion is ripe for review and for the following reasons, the Court denies Marr's motion.

**I.    Factual Background**

On January 3, 2020, Marr was convicted of felony Strangulation of a Household Member out of Campbell County, Wyoming. (Doc. 21 at 2; Doc. 22 at 2). Marr was sentenced to the Wyoming Department of Corrections for a term of 30 to 72 months. (*Id.*; Doc. 22 at 2). According to Marr, "there is no direct indication

1

in the Government's discovery that [Marr] is serving or otherwise subject to" his Wyoming sentence. (Doc. 23 at 1). Marr's counsel contacted the Wyoming Department of Corrections and was advised that Marr had been released from parole on April 10, 2023. (Doc. 26). On March 20, 2025, a federal grand jury indicted Marr in Count I—prohibited person of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 11).

Though Marr was released from parole before his indictment in this case, the Court finds that Marr's felony conviction permits the Court to move forward with the analysis as to his motion to dismiss. *See* 18 U.S.C. § 922(g)(1) (It is unlawful for any person who has been *convicted* of a crime punishable for a term exceeding one year to possess a firearm.).

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Marr's motion is appropriate for pre-trial resolution because it solely involves a question of law. Marr challenges § 922(g)(1) as unconstitutional as applied to the facts of his case. (Doc. 21 at 18).

## III. Analysis

### A. *Ninth Circuit Precedent*

After the Supreme Court issued its landmark ruling in *Bruen*, a Ninth Circuit three-judge panel found that § 922(g)(1) was unconstitutional as applied to a nonviolent felon defendant. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At the time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. However, in July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). The Ninth Circuit heard oral argument on December 11, 2024.

While that decision was vacated, this Court repeatedly upheld § 922(g)(1)'s constitutionality under the Second Amendment. *E.g.*, *United States v. Doney*, CR 24-157-BLG, 2025 WL 1180361 (D. Mont. Apr. 22, 2025); *United States v. Howe*, CR 24-159-BLG, 2025 WL 933954 (D. Mont. Mar. 27, 2025); *United States v. Zitur*, CR 24-151-BLG, 2025 WL 460778 (D. Mont. Feb. 11, 2025); *United States v. Marquart*, CR 24-161-BLG, 2025 WL 460777 (D. Mont. Feb. 11, 2025); *United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780 (D. Mont. Aug. 24, 2023); *United States v. Mitchell*, CR 24-58-BLG, 2024 WL 4542947, (D. Mont. Oct. 22, 2024), *appeal docketed*, No. 25-2665 (9th Cir. Apr. 25, 2025); *United States v.*

*Hamblin*, CR 24-40-BLG, 2024 WL 4544089 (D. Mont. Oct. 22, 2024), *appeal docketed*, No. 22-2501 (9th Cir. Apr. 18, 2025).

Then, on May 9, 2025, the Ninth Circuit issued the *Duarte* opinion upholding the constitutionality of § 922(g)(1) under *Bruen* as to the defendant and other nonviolent felons. *United States v. Duarte*, No. 22-50048, 2025 WL 1352411 (9th Cir. May 9, 2025). Additionally, the Circuit Court did not overrule it's prior holding in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which similarly upheld § 922(g)(1)'s constitutionality.

Though the ruling in *Duarte* would foreclose Marr's arguments, the Court recognizes that no Ninth Circuit opinion becomes final until the mandate issues[.]" *Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009). The mandate has not been issued and is stayed pending application for writ of certiorari. If a petition is filed, the stay shall continue until the Supreme Court's final disposition. Consequently, the *Duarte* judgment is not final, and the opinion is not settled. Reliance on the opinion would be "a gamble." *Nat. Res. Defense Council, Inc. v. Cnty of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). Therefore, the Court is free to consider the merits of the parties' arguments. *See id.*

B.  *Second Amendment Analysis*

Section 922(g)(1) states in pertinent part: "[i]t shall be unlawful for any person who has been convicted in any court, of a crime punishable by imprisonment for a

4

term exceeding one year," "to possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court found that the Second Amendment's plain text coupled with an historical analysis of the Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597 U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *Heller*, 554 U.S. 570).

Like other rights, Second Amendment rights are not unlimited. *Id.* at 21. The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, 740 F. Supp. 3d 1062, 1068 (D. Mont. July 1, 2024) (citing 602 U.S 680, 740–43 (2024) (Jackson, J., concurring)).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24.

5

Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.*

The parties make their respective arguments under the *Bruen* framework. However, the parties also address the merits of Marr's claim under *Vongxay*. Therefore, as a threshold matter, the Court will first address Second Amendment implications under *Vongxay* before turning to the parties' arguments under *Bruen*.

### 1. Section 922(g)(1) under Vongxay

Marr firmly argues that *Vongxay* no longer supplies the Court with the appropriate constitutional framework for considering § 922(g)(1)'s application to convicted felons because "the underlying reasoning and holding of *Vongxay* is fatally strained" in the wake of *Bruen*. (Doc. 21 at 7–13). Marr implores the Court to solely apply the *Bruen* history and tradition test as instructed by the Supreme Court.

However, as noted by the Government, "this Court is bound by Ninth Circuit precedent unless that precedent is 'effectively overruled,' which occurs when 'the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *United States v. Butts*, 637 F. Supp. 3d 1134, 1138 (D. Mont. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)). "The clearly irreconcilable requirement is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quotation marks omitted).

6

"[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id.* (quotation marks omitted). "So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so." *Id.* (quotation marks omitted). Under this standard, the Court finds that *Vongxay* is not clearly irreconcilable with *Bruen*.

*Vongxay* did not apply the means-end scrutiny test rejected by *Bruen* which would render *Vongxay* clearly irreconcilable with *Bruen*. *See United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780, at * 2 (D. Mont. Aug. 24, 2023). Rather, *Vongxay* applied *Heller* "to conclude that the felon dispossession statute, § 922(g)(1), is constitutional because it is consistent with longstanding limitations on gun possession and because 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" *Id.* (quoting *Vongxay*, 594 F.3d at 1118 (citing Don. D. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986))).

The *Bruen* Court held that a court must apply "[t]he test that we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 56 (citing *District of Colombia v. Heller*, 554 U.S. 570 (2008)). Thus, "*Bruen* did not overrule prior precedent regarding gun-ownership prohibition when the basis for the

7

prohibition arose from the application of *Heller*." *United States v. Hamlin*, CR-23-08-H, 2023 WL 6481146, at *4 (D. Mont. Oct. 5, 2023).

Under this logic, the Court has denied § 922(g)(1) challenges since *Bruen* because the basis for the gun possession prohibition under *Vongxay* arose from the application of *Heller*. As before, the Court determines that *Vongxay* is not clearly irreconcilable with *Bruen* and accordingly, the Court is bound by its holding. Thus, the Court finds § 922(g)(1) constitutional as applied to Marr.

Be that as it may, the Court recognizes that "*Bruen* effected a sea change in Second Amendment law." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023). And as Marr points out, the Ninth Circuit has since applied the *Bruen* framework in the face of Second Amendment challenges to firearm restrictions. *See, e.g., United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024). Accordingly, the Court will consider Marr's as applied challenge under the *Bruen* framework.

    2.    *The* Bruen *Framework*

        *a. Plain Text*

The threshold question under *Bruen* is whether the Second Amendment applies to Marr and his conduct. Marr first argues that his person and his conduct in possessing a firearm are protected under the Second Amendment. (Doc. 25 at 6). As for Marr's conduct in possessing a firearm, the Supreme Court in *Heller*,

recognized an individual's right to possess firearms in common use for traditionally lawful purposes such as self defense within the home. 554 U.S. at 592, 627. According to Marr, he is alleged to have possessed a pistol or a rifle, however, the Court is unaware of Marr's conduct in possessing the firearm. (Doc. 21 at 17). This Court will therefore assume that Marr's right to possess the firearm was a common use and covered by the Second Amendment's plain text.

As for Marr's person, he argues that as an American citizen, he is part of "the people" under the Second Amendment. (Doc. 21 at 16). He further notes a recent Ninth Circuit observation that the Supreme Court "has never suggested that felons are not among "the people" within the plain meaning of the Second Amendment[.]" (*Id.* (citing *Perez-Garcia*, 96 F.4th at 1180)).[1]

Absent a ruling from a higher court, district courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See Butts*, 637 F. Supp. 3d at 1137–38 (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 675–76 & n.157 (D. Alaska 2024) (collecting cases holding the same).

---

[1] The Court highlights that in the same sentence cited by Marr, the Ninth Circuit writes that the Supreme Court "*has* identified a longstanding tradition of prohibiting convicted felons from possessing guns." *Perez-Garcia*, 96 F.4th at 1180 (emphasis added).

9

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right." *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that Marr is included in the "people" covered by the Second Amendment.[2] *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

---

[2] The *en banc* court in *Duarte* concluded that despite Duarte's status as a felon, he is one of "the people" who enjoys Second Amendment rights. *Duarte*, 2025 WL 1352411, at *8. Again, as no mandate has been issued, the Court will not rely on *Duarte* in its determination.

10

### b. *Historical Tradition of Firearm Regulation*

Because the Court presumes Marr's conduct is protected by the Second Amendment, the Government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 at 17. The historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 602 U.S. at 692; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961).

The Government argues that even if *Vongxay* does not control, § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation as documented by the courts. (Doc. 22 at 10–12 (citing *United States v. Alvarez-Mora*, No. 3:23-

11

cr-00006-MMD, 2024 WL 1638382, at *4–6 (D. Nev. Apr. 15, 2024) (holding § 922(g)(1) is consistent with "well understood" founding-era tradition that "the government could disarm those who did not comply with certain communal obligations and abide by the norms of civic society"); *United States v. Thomas*, No. 2:22-cr-00129-GMN, 2024 WL 3459059 (D. Nev. July 18, 2024 (citing *Alvarez-Mora* post-*Rahimi* to hold § 922(g)(1) is consistent with nation's [relevant] tradition of firearm regulation); *United States v. Aguilera*, No. CR 23-00217, 2024 WL 4778044, at *9–12 (N.D. Cal. Nov. 12, 2024) (historical record that "reflects a long and well-established tradition of punishing felons," including nonviolent felons, "with permanent forfeitures of life, limb, and property" is representative historical analogue for § 922(g)(1)) (collecting similar cases)).

In opposition, Marr relies on out of circuit courts' analyses and conclusions to show that § 922(g)(1) bears little resemblance to founding era laws and thus, the Court should find the statute unconstitutional as applied to him. (Doc. 21 at 19–20). Additionally, Marr compels the Court to resist adopting rejected challenges to § 922(g)(1) from district courts within the Ninth Circuit. (*Id.* at 24–29). The Court notes that Marr makes several arguments and cites numerous cases that will not be discussed in this Order. The Court has reviewed these arguments and cases and determines they do not warrant discussion, as they do not affect the outcome of the motion before the Court.

Rather, the Court finds that the historical analogues[3] for the prohibition on the possession of weapons by convicted felons exist and are well documented in the courts. "[Section 922(g)(1)] is by no means identical to these founding era regimes, but it does not need to be." *Rahimi*, 602 U.S. at 697.

Congress codified § 922(g)(1) as part of the Gun Control Act of 1968. Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1220–21 (1968). Congress intended to "support Federal, State, and local law enforcement officials in their fight against crime and violence." *Id.* at 1213. Congress did not intend to "place undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms" appropriate to the purpose of any lawful activity. *Id.* at 1213–14. "The very structure of the Gun Control Act demonstrates that Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). "These persons are comprehensively barred by the Act from acquiring firearms by any means." *Id.* Importantly, § 922(g)(1) does not restrict law abiding citizens from the right to bear arms.

---

[3] "[C]onsideration is [ ] given to Justice Jackson's recent warning about the pitfalls of the *Bruen* methodology. Concurring in *Rahimi*, Justice Jackson cautioned: 'It is not clear what qualifies policymakers or their lawyers (who do not ordinarily have the specialized education, knowledge, or training of professional historians) to engage in this kind of assessment . . . *Bruen* also conscripts parties and judges into service as amateur historians, casting about for similar historical circumstances.'" *Youngblood*, 740 F. Supp at 1069 n.3 (quoting *Rahimi*, 602 U.S. at 745 n.3 (Jackson, J., concurring)).

Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina v. Whitaker*, 913 152 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *United States v. Ramos*, No. 2:21-cr-00395, 2022 WL 17491967, at *4 (C.D. Cal. Aug. 5, 2022) (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

Additionally, "pre-Revolutionary legal scholars have noted that disarming criminals and those who 'have no[] . . . [i]nterest in preserving the public[] [p]eace was integral to the functioning of a well-regulated republic society." *Roberts*, 710 F. Supp. at 679 (citing *United States v. Ramos*, No. 2:21-CR-00395, 2022 WL 17491967, at *4 (C.D. Cal. Aug. 5, 2022) (quoting John Trenchard & Walter Moyle, *An Argument Shewing, That a Standing Army is Inconsistent with a Free Government, and Absolutely Destructive to the Constitution of the English Monarchy* 7 (1697); *see also* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–

08 (2004) ("The law demonstrates that in a well-regulated society, the state could disarm those it deemed likely to disrupt society.")).

The disarmament of convicted felons in conjunction with the historical regulation of preserving public peace is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." 554 U.S. at 626. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. at 786. Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many ... prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 602 U.S. at 699; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing

15

*Rahimi*, 602 U.S. at 697–98) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

Here, the historical tradition of disarming citizens who are convicted, especially for serious offenses like felonies, poses a "comparable burden" on a defendant's Second Amendment right as § 922(g)(1)'s firearm restriction on Webb. *See Bruen*, 597 U.S. at 29. Both restrictions allow for complete disarmament of defendants convicted of serious charges. Likewise, the modern and historical regulations are "comparably justified." *See id.* Like § 922(g)(1) and the Gun Control Act, the historical regulation for convicted felons have included protection of the public and preserving public peace. Thus, the weight of evidence before the Court supports a finding that § 922(g)(1) is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

Marr is convicted of a felony—a serious offense. The historical regulation of individuals who committed felonies or other serious offenses, whether violent or nonviolent, "imposes a comparable burden" of disarmament as § 922(g)(1). *See id.* at 30 (requiring "only that the government identify a well-established and representative historical *analogue*, not a historical *twin*."). Accordingly, the Court

finds that the Gun Control Act's firearm restriction on a person convicted of a felony (18 U.S.C. § 922(g)(1)) is constitutional as applied to Marr. For these reasons, the Court denies Marr's motion.

## IV. Conclusion

IT IS SO ORDERED that Defendant Frank Spencer Marr's Motion to Dismiss (Doc. 20) is DENIED.

DATED this 10th day of June, 2025.

SUSAN P. WATTERS
United States District Judge